**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 24-4171

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARMAND SAQUAN SUFYAN LEWIS-LANGSTON,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:23-cr-00321-TDS-1)

_____

Submitted:  November 4, 2025                          Decided:  April 20, 2026

_____

Before KING and WYNN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:**  Louis C. Allen, Federal Public Defender, Eric D. Placke, Interim Federal Public Defender, Kathleen A. Gleason, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Sandra J. Hairston, United States Attorney, Dan Bishop, United States Attorney, Joanna G. McFadden, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Armand Saquan Sufyan Lewis-Langston pled guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), the district court determined that he had previously committed three violent felonies on different occasions, thus qualifying him for an enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).    The court then sentenced Lewis-Langston to 200 months' imprisonment.  Lewis-Langston appeals, arguing that the district court reversibly erred by deciding at sentencing that his three ACCA predicate offenses were committed on different occasions.

We held this case in abeyance for *Erlinger v. United States*, 602 U.S. 821 (2024); then for *United States v. Brown*, 136 F.4th 87 (4th Cir.), *cert. denied*, 146 S. Ct. 391 (2025), and *United States v. Boggs*, No. 22-4707, 2025 WL 1249364 (4th Cir. Apr. 30, 2025) (argued but unpublished); and most recently for *United States v. Blackmon*, No. 22-4576, 2026 WL 624484 (4th Cir. Mar. 5, 2026) (argued but unpublished).    Following supplemental briefing from the parties on the impact of *Brown* and *Boggs*, we conclude that the district court erred, but that the error is harmless.  We therefore affirm.

The ACCA enhancement applies if a defendant convicted of a § 922(g) offense "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  In *Erlinger*, the Supreme Court held that the facts relating to the different occasions question "must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty

2

plea)." 602 U.S. at 834. Thus, a district court errs by deciding the different occasions issue at sentencing. *Id.* at 838-39.

But so-called "*Erlinger* errors" are subject to harmless error review. *Brown*, 136 F.4th at 92-96. Where, as here, the defendant was convicted after pleading guilty, the Government establishes that an *Erlinger* error is harmless by "show[ing] beyond a reasonable doubt that if . . . [the defendant] had been correctly advised at his plea hearing that he was entitled to have a jury resolve [the different occasions issue] unanimously and beyond a reasonable doubt, he would have nonetheless waived that right and admitted as part of his guilty plea that his prior offenses were committed on different occasions." *Id.* at 97 (citation modified).

In concluding that the *Erlinger* error in *Brown* was harmless, we noted that "Brown chose to plead guilty to the firearm-possession offense *after* having been twice informed that ACCA's mandatory minimum of 15 years and its maximum of life would apply if the judge found its requirements satisfied." *Id.* at 98. And although Brown raised the different occasions issue at sentencing, he did not seek to withdraw his guilty plea. *Id.* Moreover, Brown did not contest the accuracy of his presentence report (PSR), even though the facts alleged therein provided the basis for the district court's different occasions finding. *Id.*

Our analysis in *Brown* leads us to conclude that the error in this case was similarly harmless. First, both in his plea agreement and at the plea hearing, Lewis-Langston was informed of the possible ACCA enhancement. During the plea hearing, Lewis-Langston confirmed that he had read his plea agreement, discussed it with his attorney, and fully understood its terms. Lewis-Langston advised the court that he understood the different

3

statutory ranges that would apply depending on the sentencing court's ACCA determination. Second, although he raised the different occasions issue at sentencing, Lewis-Langston did not seek to withdraw his plea. Thus, like in *Brown*, the district court's failure to advise Lewis-Langston "that he was entitled to have a jury, rather than a judge, determine whether his previous offenses had been committed on different occasions . . . apparently played no role in his guilty plea." 136 F.4th at 98.

Third, Lewis-Langston did not meaningfully dispute the accuracy of the PSR. Prior to sentencing, he objected to the district court's reliance on the information in the PSR to determine the different occasions question on the basis that it would violate the Sixth Amendment. But it is now undisputed that the court erred in making the different occasions determination. The relevant inquiry, therefore, is whether Lewis-Langston still would have pled guilty if the court had advised him at his plea hearing of the right to a jury determination on the issue. *See Brown*, 136 F.4th at 97. Lewis-Langston asserts that "there is no competent evidence in the record from which this Court can determine [he] would have received an unfavorable verdict on the 'occasions' issue." But because he did not dispute the PSR's accuracy, the facts contained in the PSR are properly considered when answering the harmless error inquiry. *See id.* at 98 (relying on information in PSR and observing that "Brown had every incentive to dispute the accuracy of the report's information at his sentencing hearing if it were mistaken, yet he did not do so").

Finally, Lewis-Langston emphasizes that if he prevailed on the different occasions issue, he would have faced a maximum sentence of 10 years' imprisonment. But in *Brown*, we recognized an inverse relationship between the strength of the evidence supporting the

4

ACCA enhancement and the likelihood that a defendant would forgo the benefits of pleading guilty for the opportunity to have a jury decide the different occasions issue. *Id.* There, the evidence supporting Brown's ACCA enhancement was exceptionally strong. *Id.* at 98. Thus, "given that the possibility of a favorable verdict on the different occasions issue would have been so exceedingly remote as to be practically irrelevant, we [could not] fathom that Brown would have traded the benefit of pleading guilty for such long odds." *Id.* at 99.

Here, the PSR established that each of Lewis-Langston's ACCA predicates—three North Carolina felony convictions for breaking and/or entering—was perpetrated at a different location, against different victims, at least a week apart from the other offenses. Specifically, the PSR established that Lewis-Langston's predicate offenses occurred on July 21, July 28, and October 28, 2015. It is well-established that "the word 'occasion' in [the] ACCA should be given its 'ordinary meaning'—that is, 'essentially an episode or event.'" *Id.* (citation modified, quoting *Wooden v. United States*, 595 U.S. 360, 366 (2022)). "Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion," while "offenses separated by substantial gaps in time or significant intervening events" will not. *Wooden*, 595 U.S. at 369 (citation modified). Courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a significant distance." *Id.* at 370 (citation modified).

In our view, in light of the "exceedingly remote" possibility of a favorable verdict on the different occasions issue, the evidence leaves "no doubt that [Lewis-Langston]

5

would have pleaded guilty if . . . he had been informed that he was entitled to have a jury find that fact beyond a reasonable doubt." *Brown*, 136 F.4th at 99.  Accordingly, we conclude that the *Erlinger* error in this case is harmless.

We therefore affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*